IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 12, 2020

## STATE OF TENNESSEE v. LONNIE DUANE ORR

**Appeal from the Criminal Court for Davidson County**
**No. 2011-B-103    Cheryl Blackburn, Judge**

_____

### No. M2019-01555-CCA-R3-CD

_____

The Defendant, Lonnie Duane Orr, appeals from the trial court's community corrections revocation for his eight-year, Range III sentence for his conviction of burglary.  He contends that the court erred in revoking his community corrections sentence and ordering him to serve his sentence in the Department of Correction.  We affirm the judgment of the trial court.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and TIMOTHY L. EASTER, JJ., joined.

Martesha L. Johnson, District Public Defender; Emma Rae Tennent (on appeal) and Christ Street-Razbadouski (at hearing), Assistant District Public Defenders, for the Appellant, Lonnie Duane Orr.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; Jordan Hoffman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant's burglary conviction relates to his entry into a church and forced entry into money boxes and closets inside the church.  He was found hiding in a confessional.  The damage to the church included the following:  Large steel collection boxes were ripped from the floor and beaten with a hammer.  The boxes were about 100 years old and were badly bent from the damage.  Two sets of doors were beaten open, and cabinet doors were pried from their mounts.  Other doors were damaged from attempts to pry them open.  Money had been taken from a veterans' memorial case, and the case was damaged.  Cigarette ashes were found in a baptismal font.  The Defendant caused

approximately $5000 in damages, and he took $700. As part of a plea agreement, charges for theft and vandalism were dismissed. The manner of service of the agreed-upon eight-year sentence was reserved for the trial court's determination.

The evidence at the sentencing hearing showed that the Defendant was homeless and had recently traveled to Nashville. He testified that he had gone into the church because it was warm, that he stayed inside after hours, that he wanted to get money for food, and that he had been drinking for several days. He said he was age sixty-one and was an alcoholic. He acknowledged that he had a substantial criminal history dating back to 1967 and that he had prior burglary convictions, some of which involved churches. He said he had not had steady employment since the 1980s. The trial court imposed a split confinement sentence of one year to serve and the remainder of the sentence to be completed in the community corrections program.

Within six months of the Defendant's release from jail, a community corrections violation warrant was issued, which charged the Defendant with seven violations of the terms of his community corrections sentence. The court found that the Defendant had violated the terms of community corrections, returned him to the program, and ordered him to live at "Grandpa's House." About six months after the court sustained the first violation, a second violation warrant issued, charging the Defendant with failing to return to Grandpa's House. An amended warrant later added a charge that the Defendant had failed to appear for a scheduled appointment. About five and one-half years after the second warrant was issued, it was amended a second time to add an allegation that the Defendant had violated the terms of community corrections by committing additional offenses in Iowa.

At the revocation hearing, the Defendant conceded that he had violated the terms of community corrections. He testified that he left Grandpa's House and that he worked day labor jobs in Indiana for a couple of years. He acknowledged that he spent time in jail in Indiana for theft and that the police told him he had an outstanding warrant in Tennessee. He said that after he was released from jail in Indiana, he went to Illinois and Wisconsin. He said that he had lived in Milwaukee for about three years, that he had been homeless, and that he had served one year for theft of money he took from a museum donation box. He said Wisconsin authorities advised him of the outstanding Tennessee warrant. He agreed he had supported himself during his time "on the streets" in Indiana, Illinois, and Wisconsin through petty crimes but said he had not been a "career thief" and had worked "every day or about every day."

The Defendant testified that he went to Iowa, where he connected with the Salvation Army. He said he began receiving Supplemental Security Income while he was in Iowa. He said he was arrested for public intoxication, which led to his extradition to Tennessee. He said he had been in custody in Tennessee for sixty-three days.

The Defendant testified that he had been working with his Iowa caseworker to establish Social Security Disability payments and that he had been accepted into a halfway house program in Nashville. He said he could pay the rent for the halfway house with his disability benefits. He said he understood that he would have to stop drinking and attend outpatient treatment if the trial court ordered a non-incarcerative sentence. He said he regretted his having left the program at Grandpa's House.

Relative to the underlying offense in the present case, the Defendant acknowledged that he had taken money from the church but denied that he had damaged property inside the church. He claimed he did not know who had damaged property inside the church. He said he took approximately $25.

The trial court found that the Defendant had already received a reprieve for his previous community corrections violation and that his criminal behavior had continued after he left Tennessee before completing his sentence. The court ordered the Defendant to serve his sentence in the Department of Correction. This appeal followed.

The Defendant contends that the trial court abused its discretion in ordering him to serve his sentence in the Department of Correction following his concession that he had violated the terms of his community corrections sentence. The State counters that no abuse of discretion has been shown. We agree with the State.

A trial court may revoke a defendant's probation upon its finding by a preponderance of the evidence that the defendant violated a condition of the sentence. T.C.A. § 40-35-311(e) (2019) (prescribing the procedure for probation revocation proceedings). Given the similar nature of a sentence of community corrections and a sentence of probation, the same principles are applicable in deciding whether the revocation of a community corrections sentence is proper. *State v. Harkins*, 811 S.W.2d 79, 83 (Tenn. 1991). Our supreme court has concluded that a trial court's decision to revoke a defendant's community corrections sentence "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *Id.* at 82 (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *Shaffer*, 45 S.W.3d at 555 (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the

probation." T.C.A. § 40-35-311(e)(1) (2019). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965)). When a defendant's community corrections sentence is revoked, the court "may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed." T.C.A. § 40-36-106(e)(4) (2019).

In ordering the Defendant to serve the remainder of his sentence in confinement, the trial court considered that the Defendant had a prior reprieve following a violation of the terms of community corrections, that he had absconded from the program within months of being returned to community corrections, that he returned to an itinerant lifestyle, and that he had continued to commit criminal offenses. The court likewise considered the Defendant's long history of criminal convictions which predated the present offense. Although the Defendant had made recent progress in obtaining housing and disability benefits, the court saw little prospect of his long-term success. Upon review, we conclude that the court did not abuse its discretion in revoking the Defendant's community corrections sentence and ordering him to serve the remainder of his sentence in confinement. *See* T.C.A. §§ 40-35-308(a), (c); -310; -311(e)(1). The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE